# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA MALDONADO,<br><br>            Plaintiff,<br><br>   v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security[1],<br><br>            Defendant.<br>_____/ | Case No. 1:24-cv-01263-SKO<br><br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br><br>(Doc. 1) |

## I.     INTRODUCTION

Plaintiff Sara Maldonado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.     FACTUAL BACKGROUND

On October 22, 2021, Plaintiff protectively filed a claim for DIB payments, alleging she became disabled on January 1, 2021, due to a back injury; left leg problems; shoulder problems;

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

knee problems; high blood pressure; and diabetes. (Administrative Record ("AR") 17, 69–70, 86–87, 313, 317, 347.)

Plaintiff was born in October 1970 and was 50 years old on the alleged onset date. (AR 69, 86, 313, 347.) She has a high school education, and previously worked as a business agent for a labor union. (AR 27, 40–41, 318.)

**A.   Relevant Evidence of Record[3]**

In January 2020, Plaintiff presented for a physical examination with Kiran Reddy, M.D. (AR 895–96.) The examination was normal, with appropriate range of motion and muscle tone, intact motor and sensation, and steady gait. (AR 895.)

Plaintiff presented for her annual physical examination with Dr. Reddy in October 2022. (AR 925–26.) She complained of muscle cramps. (AR 925.) Her examination was normal, with appropriate range of motion and muscle tone, intact motor and sensation, and steady gait. (AR 925–26.)

In February 2023, Plaintiff complained to Dr. Reddy of a skin rash. (AR 929–30.) Upon physical examination, Plaintiff's motor and sensation were intact and her gait steady. (AR 929.) Plaintiff's rash was not improving and had spread in April 2023. (AR 931–32.) Her physical examination was normal, other than the skin rash, as before. (AR 931.)

Dr. Reddy completed a "Physical Medical Source Statement" form in April 2023. (AR 770–73.) Dr. Reddy noted that Plaintiff's diagnoses are lumbar spinal stenosis, and spondylosis with radiculopathy in the lumbar region, and that the "clinical findings and objective signs" included tenderness in Plaintiff's lower lumbar spine, stenosis and radiculopathy, and paresthesias. (AR 770.) She opined that Plaintiff could sit for one hour before needing to get up, stand for up to ten minutes before needing to sit down or walk around, and stand and walk for less than two hours in an eight-hour workday. (AR 771.) According to Dr. Reddy, Plaintiff would sometimes need to take unscheduled breaks of 30 minutes at least every 30 minutes due to muscle weakness, pain and paresthesias, and numbness, and she requires the use of a cane due to imbalance, pain, and

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

weakness. (AR 771.) Dr. Reddy opined that Plaintiff could rarely lift less than 10 pounds, rarely twist or stoop, and that she should never crouch, squat, or climb stairs or ladders. (AR 772.) She noted that Plaintiff would be off task for 25% or more of the workday and that her impairments would produce good days and bad days. (AR 772.)

Later in April 2023, Plaintiff presented for a telemedicine visit with Dr. Reddy to discuss her complaints of non-radiating back pain, numbness, weakness, and pain. (AR 933–34.) She reported that the pain worsens if she walks or sits for too long. (AR 933.) She also reported that she cannot kneel, squat, or climb stairs due to knee and back pain. (AR 933.) Plaintiff was assessed with lumbar spondylosis with radiculopathy and lumbar spinal stenosis, for which she was scheduled for injections and may "use cane for stability as advised by" her orthopedist. (AR 933.)

Plaintiff presented for a check up appointment with Dr. Reddy in June 2023 (AR 939–40.) Her examination was normal, with intact motor and sensation and steady gait. (AR 939.) That next month, Plaintiff reported that she was "doing well overall," and her "itching and rash [had] subsided." (AR 942.) She had a normal physical examination. (AR 942.)

In August 2023, Plaintiff had a telemedicine visit with Dr. Reddy again complaining of bilateral low back pain with intermittent radiation of pain down her legs and numbness and tingling from the knees down that is exacerbated by standing for long periods. (AR 945.) The lumbar spondylosis with radiculopathy and lumbar spinal stenosis assessments were noted as before. (AR 945.) That same month, Dr. Reddy completed another Physical Medical Source Statement" form, in which she opined to similar limitations as those in April 2023. (AR 774–77.) A physical examination with Dr. Reddy in September 2023 was normal. (AR 950.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on February 23, 2022, and again on reconsideration on April 26, 2022. (AR 17, 109–114, 116–120.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 122–23.) At the hearing on October 25, 2023, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 39–58.) A Vocational Expert ("VE") also

testified at the hearing. (AR 58–65.)

**C.     The ALJ's Decision**

In a decision dated December 19, 2023, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–28.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 19–28.) The ALJ decided that Plaintiff meets the insured status requirements of the Act through December 31, 2025, and she had not engaged in substantial gainful activity since January 1, 2021, the alleged onset date (step one). (AR 19.) At step two, the ALJ found Plaintiff's following impairments to be severe: lumbar spine degenerative disc disease status post laminectomy and fusion surgery on L3-L4, L4-L5, and L5-S1, and obesity. (AR 19–21.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 21–22.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) with the following additional limitations: she can stand and / or walk for 4 hours in an 8-hour workday, she would require a one-handed cane for ambulation; She can occasionally push, pull, and operate foot controls with her bilateral lower extremities; she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, crouch, crawl, and kneel; she should avoid exposure to workplace hazards, such as unprotected heights or moving machinery.

(AR 22–27.) Although the ALJ recognized that Plaintiff's impairments "could have reasonably

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

been expected to cause the above alleged symptoms reasonably related to those impairments[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." (AR 23.)

The ALJ determined that Plaintiff could perform her past relevant work as a business representative for unions as generally performed in the national economy (step four). (AR 27–28.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 60–63.) The ALJ ultimately concluded Plaintiff was not disabled at any time from January 1, 2021, the alleged onset date, through the date of the decision. (AR 28.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 12, 2024. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe

5

> impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,' "and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court

6

must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that her RFC is not supported by substantial evidence because the ALJ did not adequately evaluate the supportability of treating physician Dr. Reddy's opinion and failed to address the consistency factor at all. (Docs. 13, 18.) While the Court finds that the ALJ's supportability evaluation was proper, it agrees with Plaintiff that the ALJ reversibly erred when they failed to address the consistency of Dr. Reddy's opinion and will remand on that basis.

**A.   Legal Standard**

Plaintiff's claim for DIB is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical

7

opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer

needs to make specific findings regarding these relationship factors.

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Reddy's opinions.

**B.  Analysis of Dr. Reddy's Opinion**

Dr. Reddy's opinion, which was given in April 2023 and reiterated in August 2023, was found by the ALJ to be "not persuasive" for the following reasons:

> This opinion is not persuasive as it is overly restrictive and inconsistent [with] the evidence of record including his own objective observations while treating [Plaintiff]. These limitations appear to be based upon [Plaintiff's] self-reported functioning (e.g. 16F/69), and they are not consistent with his most recent examinations which reveal intact motor and sensation in all 4 extremities as well as a steady gait (Exhibit 16F/40, 43, 45, 53, 56, and 64).

(AR 26.)

1. <u>Supportability</u>

The ALJ sufficiently evaluated the supportability of Dr. Reddy's opinion by citing several of Dr. Reddy's own examination findings that did not substantiate the opinion. As set forth above, the supportability factor requires the ALJ to evaluate the relevant objective medical evidence and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1); *Ford*, 950 F.3d at 1154. Objective medical evidence includes clinical signs and diagnostic findings. *See* 20 C.F.R. § 404.1502(c), (f), (g). The ALJ dismissed Dr. Reddy's mobility and postural restrictions because her examination findings—including those rendered in and around the same months as the restrictions—showed appropriate range of motion and muscle tone, intact motor and sensation, and steady gait. (AR 26 (citing AR 926, 929, 931, 939, 942,

9

950)).) The ALJ reasonably determined that these objective findings stand in contrast to the significant limitations Dr. Reddy imposed in her opinion. (AR 26 (citing AR 770–77, where Dr. Reddy concluded Plaintiff could sit for only one hour before needing to get up, stand for up to ten minutes before needing to sit down or walk around, stand and walk for less than two hours in an eight-hour workday, could rarely lift less than 10 pounds, rarely twist or stoop, and that she should never crouch, squat, or climb stairs or ladders.).)

Plaintiff contends the ALJ harmfully erred in discounting Dr. Reddy's opinion by "cherry picking" irrelevant findings regarding skin rashes and diabetes-related issues and omitting other supporting evidence in the record.[5] (Doc. 13 at 11.) Plaintiff points to treatment records that "document treatment for issues related to her lumbar spine DDD, status-post fusion surgery L3-L4, L4-L5 and L5-S1." (*Id.* (citing AR 933, 945).) As an initial matter, to the extent Plaintiff is asking the Court to re-weigh the evidence and place more emphasis on medical records that support her preferred outcome, such is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

More critically, while Dr. Reddy did assess Plaintiff on two occasions with lumbar spondylosis with radiculopathy and lumbar spinal stenosis, those assessments were made during telemedicine visits and therefore without the benefit of physical examinations or other objective evidence. (*See* AR 933, 945.) Instead, those assessments, and thus the associated opined limitations rendered in conjunction with those visits, appear to be based on Plaintiff's reported pain, numbness, and weakness in her back and knees. (*Compare* AR 933 *with* AR 771–72 & AR

---

[5] Plaintiff points to such cherry picking as evidence that the ALJ "harmfully erred by failing to perform an adequate 'consistency' evaluation of Dr. [Reddy's] opinions." (Doc. 13 at 11.) However, in so arguing, Plaintiff mistakenly conflates the consistency factor (which is the extent to which a medical opinion is consistent with the evidence from *other* medical and nonmedical sources) with the supportability factor (which is the extent to which a medical source supports the medical opinion by explaining relevant objective medical evidence). 20 C.F.R. § 404.1520c(c)(1), (2); *Woods*, 32 F.4th at 791–92.

945 *with* AR 775–76.) "If a treating provider's opinions are based . . . on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quotation marks omitted). Earlier in the decision, the ALJ discounted Plaintiff's allegations that pain severely limited her ability to sit, stand, walk, and lift because those allegations were not supported by the medical record. (AR 23, 25.) Plaintiff does not contest this finding. It was reasonable for the ALJ likewise to discount Dr. Reddy's opined limitations on Plaintiff's ability to sit, stand, walk, and lift because those limitations were based on Plaintiff's allegations of pain. Ultimately, the ALJ adequately evaluated the supportability of Dr. Reddy's opinion and supported the conclusion that it was unpersuasive with substantial evidence. 20 C.F.R. § 404.1520c.

  2. <u>Consistency</u>

As to the consistency factor, however, the ALJ erred because they failed to explain how Dr. Reddy's opinion is inconsistent with ***other*** objective medical evidence in the record. The ALJ must explain how it considered both supportability <u>and</u> consistency when evaluating the persuasiveness of a medical opinion. *See Woods*, 32 F.4th at 792; *see also Hiten v. Kijakazi*, No. 1:22-cv-00473-JLT-BAM, 2023 WL 5806452, at *5–6 (E.D. Cal. Sept. 7, 2023) (collecting cases noting the ALJ must explain how both supportability and consistency factors were considered in determining the persuasiveness of an opinion). Here, the ALJ simply states that the opinion is "overly restrictive and inconsistent [with] the evidence of record," but does not explain how, or elaborate as to what "evidence in the record"—other than the examinations performed by Dr. Reddy herself—undermines Dr. Reddy's opinion. While Defendant attempts to provide reasons why the ALJ could have found that Dr. Reddy's opinion was not supported by the objective medical evidence of record (*see* Doc. 17 at 6–8), this is the sort of post hoc rationale that is impermissible in the Social Security context. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the ALJ himself); *see also Walker v.*

*Comm'r of Soc. Sec.*, No. 2:22-CV-01871-EJY, 2024 WL 64784, at *4 n.4 (D. Nev. Jan. 4, 2024) ("In response to Plaintiff's motion, the Commissioner specifically addresses the supportability and consistency factors and provides citations to the record. Unfortunately these are *ad hoc* rationales the Court cannot consider"). Consequently, the Court is unable to find the ALJ properly discussed the consistency factor. *See Beltran v. Kijakazi*, No. 1:21-cv-00603-JLT-BAM, 2023 WL 6164105, at *5 (E.D. Cal. Sept. 21, 2023) (finding that the ALJ did not "clearly address the consistency factor" because they did not "explain the extent to which the limitations identified by [the opining physician] are inconsistent with other evidence in the record, including the opinions from other medical sources and nonmedical evidence."); *see also Rios v. O'Malley*, No. 1:22-cv1164-HBK, 2024 WL 280602, at *5 (E.D. Cal. Jan. 25, 2024) (remanding when ALJ did not "provide the requisite explanation" regarding consistency and explaining that, while the defendant offered citations to various treatment records in its motion, the court did not consider this reasoning because "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking" are not permitted).

**C.   Harmless Error Analysis**

The ALJ's failure to consider meaningfully the consistency of Dr. Reddy's opinion is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, the VE testified that the addition to Plaintiff's RFC of a requirement of four 15-minute unscheduled breaks during the workday would preclude all work. (AR 65.) The Court therefore cannot "confidently conclude" that "no reasonable ALJ" considering Dr. Reddy's opinion could have reached a different disability determination. *See Carter v. Comm'r of Soc. Sec.*, No. 2:24-CV-01177-DGE, 2025 WL 747429, at *10 (W.D. Wash. Mar. 10, 2025) ("These errors were not harmless, as they impacted the RFC formulated by the ALJ. If Plaintiff's testimony and the opinions of Dr. Craig and Nurse Wong had been credited, the ALJ could not have concluded Plaintiff was able to work.") (internal citations omitted); *see also Suzi Marie H. v. O'Malley*, No. 3:22-CV-01963-WQH-AHG, 2024 WL 965233, at *14 (S.D. Cal. Mar. 5, 2024) (determination

that medical opinions were unpersuasive without providing an explanation supported substantial evidence was "not inconsequential since it could have impacted the final RFC.").

**D.    Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds that remand for additional proceedings is necessary because the consistency of the medical opinion of Dr. Reddy must be analyzed further before a determination of disability may be made.[6] *See* 20 C.F.R. § 404.1520c(c)(2); *see also Arroyo v. Comm'r of Soc. Sec.,* No. 2:22-CV-00360-DMC, 2023 WL 3853485, at *8 (E.D. Cal. June 6, 2023) (remanding for further proceedings where the ALJ failed to explain how a physician's opinion was inconsistent with other objective medical evidence); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter

//

//

//

---

[6] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to Dr. Reddy's opinion. Nor does the Court express what Plaintiff's RFC ultimately should be. These are for the ALJ to decide. *Ford*, 950 F.3d at 1154.

judgment in favor of Plaintiff Sara Maldonado against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **May 23, 2025**                                   /s/ *Sheila K. Oberto*
                                                                                  UNITED STATES MAGISTRATE JUDGE